**Crawford Estate**

*Donald C. Bush* and *Lee Hummel,* of *Anderson, Moreland and Bush,* for accountants.

*Donetta W. Ambrose,* Special Deputy Attorney General, John M. Duff, Deputy Attorney General and Israel Packel, Attorney General, for Commonwealth, parens patriae.

RAHAUSER, J., March 14, 1974.—Edwin R. Crawford died on September 13, 1936. Under Item Ninth of his will, Mr. Crawford provided as follows:

"ITEM NINTH: I give and bequeath unto the Executors of this my Last Will and Testament, hereinafter named, as Trustees, the sum of One Million Five Hundred Thousand Dollars ($1,500,000.00), in trust, however, for the following uses and purposes:

"(1) I give to the said Trustees full power and authority to manage, control, protect, sell, lease, invest, re-invest and keep invested all moneys, securities and other property of whatsoever kind they shall receive under this trust. I do not restrict the said Trustees to any particular form or kind of investment, nor to such as are allowed by the laws of Pennsylvania for the investment of trust funds, but I leave the form and kind of investments, from time to time, to the sound judgment and discretion of said Trustees. I give the said Trustees power and authority to sell and convey any real estate or any other property that may belong to the trust, either at public or private sale, for such price or prices, at such time or times, and upon such terms of payment and security therefor as the said Trustees may determine, and to execute, deliver and acknowledge any deed or deeds or other instruments as may be required to convey title to the property so sold, and the purchaser shall not be required to look to the application of the purchase money, whether the property sold be real or personal.

"(2) I direct the said Trustees shall have and exercise all the rights and powers incident to the ownership of all property, real and personal, held by them from time to time belonging to the trust, as fully and absolutely as though they were the owners of said property in their own right.

"(3) In case of the death, resignation or refusal to act of any of the said Trustees, the surviving or continuing Trustee or Trustees shall, from time to time, appoint a new Trustee or Trustees, citizens and resi-

dents of the Commonwealth of Pennsylvania, in place of the Trustee or Trustees so dying, resigning or refusing to act as such Trustee, and each and every new Trustee so appointed from time to time shall have, exercise and enjoy all of the powers, authorities and discretion herein conferred, as though he had been named herein as one of the Trustees. Should the said surviving and continuing Trustee or Trustees fail to appoint a new Trustee or Trustees within ninety (90) days after the death, resignation or refusal to act of any Trustee, then it shall be the duty of such surviving Trustee or Trustees to petition the Orphans' Court of Allegheny County to make said appointment under such notices or other provisions as the said court may order and direct, which appointment when made shall be of the same effect as though made by the surviving or continuing Trustee or Trustees, or upon the failure of such Trustee or Trustees to so petition the said Orphans' Court then that Court may of its own motion make such appointment or appointments.

"(4) The decisions and acts of a majority of the Trustees shall be and constitute a valid exercise of the trust, powers and discretions conferred upon said Trustees, it being my will that the decisions and acts of the majority of said Trustees shall constitute and be taken as the acts and decisions of all of said Trustees.

"(5) I authorize, empower and direct the said Trustees so long as they may own any of the capital stock of the First National Bank of Duquesne, Pennsylvania, to fully protect the solvency of that Bank in whatever manner they in their sole discretion may deem wise and for the best interests of the depositors and stockholders of said Bank, and for that purpose use so much of the income and principal of said trust fund as they may believe requisite for that purpose.

"(6) I authorize, empower and direct the said Trus-

tees to pay, from time to time, the net income from said trust fund and so much of the principal as they may deem best to such religious, educational, charitable, public and other deserving uses, objects, persons and purposes as they may, in their sole discretion, from time to time appoint, order and direct.

"(7) I suggest to the said Trustees, but do not so direct, that in the distribution from time to time of the net income and principal of said trust fund, consideration be given first to the aid, needs and well being of citizens of Allegheny County, Pennsylvania, and particularly to deserving employees or former employees of McKeesport Tin Plate Company, who through illness, accident, age or other misfortune have been deprived of the power or opportunity to earn the livelihood formerly enjoyed by them, and I hereby particularly authorize and empower the said Trustees to contribute from time to time to the support and maintenance of such deserving employees and former employees as they, in their sole discretion, may deem such employees or their immediate families to merit. I further suggest, but do not direct, that, in determining what employees or former employees of the McKeesport Tin Plate Company may merit such aid and assistance, the said Trustees consult with those who are in charge of the management of that Company.

"(8) I desire that the said Trustees shall be compensated for the services they may render to the trust and that their expenses, including the salaries and expenses of such persons as they may employ to assist them in the management of the trust be paid. I therefore give power and authority to said Trustees to fix the compensation each shall receive from time to time. The compensation of said Trustees and all other compensation, and all expenses of administration of the trust,

shall be paid each year out of the income or principal of said trust fund."

Under date of November 16, 1937, distribution was made to the trustees named in Item Ninth of the will. From time to time, individual trustees have died or resigned and individual successor trustees have been appointed pursuant to the directions in Item Ninth. The present trustees filed a ninth and partial account in this trust on November 2, 1973, and the account came before this court for audit on January 17, 1974. No exceptions to the said account were filed, but the Commonwealth of Pennsylvania filed what it called a "Report of the Attorney General on the Trustees' Ninth and Partial Account."

The said report of the Attorney General looked into the propriety of certain disbursements shown in the account and concluded that they were proper. However, the said report indicated that the Attorney General's office was concerned as to income compensation shown in the account, and it recommended that the trustees take bids from major Pittsburgh banks for services as trustee. The Attorney General's office was of the opinion that the current annual charge of $13,-300.00 could be reduced by this means.

The trustees are unwilling to accept the suggestion of the Attorney General's office. They point to the terms of Item Ninth of the will as showing clearly that the settlor of the trust wanted individual trustees to administer the trust which he created and cite Trimble Estate, 383 Pa. 443, 446-48 in support of their position that the trust should continue to be administered by individual trustees.

In considering the propriety of the compensation to be paid to the trustees, section 242 of the Restatement 2nd, Trusts is relevant. It reads in pertinent part as follows:

"Among the circumstances to be considered in determining the amount of compensation are: (1) the amount and character of the trust property; (2) the extent of the risk and responsibility of the trustee; (3) the character of the services rendered by the trustees; (4) the degree of difficulty in administering the trust; (5) the skill and success of the trustee in administering the trust; (6) the statutory rates of compensation for executors and administrators."

The current market value of the assets in the trust before the court is between $4,000,000 and $4,500,000. These assets consist of stocks, bonds and notes of many different companies and governmental bodies. During the five years covered by the account presently being audited by the court, the trustees bought, sold and exchanged securities. They disbursed over $7,600,000 in the purchase of assets and made gains on sale of assets of over $2,000,000. They received interest and dividends of a little more than $1,000,000 in this same five-year period. These figures indicate that the trustees have successfully managed large sums of money in a period when investment hazards abounded. This should be kept in mind when considering their current compensation.

The auditing judge is of the opinion that the trustees have performed their duties well and in accordance with the directions set forth by the settlor of the trust in Item Ninth of his will. The compensation of the trustees as set forth in the account presently before the court is reasonable for the services reflected in the account and as detailed by George H. Ramsey, one of the trustees, in his testimony at the audit. At this time, the auditing judge will not direct any future course of conduct on the part of the trustees, nor pass upon the propriety of compensation to be earned by them in the future. However, the trustees are directed to file an-

other account not more than five years from the date of filing of their ninth and partial account in this estate. This will enable the court to continue to properly supervise the administration of this trust estate.

The assets as shown in the balance for distribution in the account filed by the trustees will be awarded back to them for further administration.